Cason *v.* Robson.

JOHN CASON, Executor, &c., *vs.* JOHN ROBSON.

R. filed his bill in the chancery court against C.'s testator, alleging that certain lands and slaves were conveyed by F. to said C., in trust to secure the payment of certain notes made by F. to M.; and M. being indebted to R., transferred one of the notes to him as collateral security; that C. accepted the trust, and having notice that he, R., held the said note for the purpose above stated, sold a part of the property conveyed to him as trustee for an amount of money sufficient to pay all the notes secured by the trust deed, and entered the same as satisfied; and that after the sale, and before the deed was entered satisfied, or the proceeds disposed of, he, R., demanded

Cason *v.* Robson.

payment from C. of the amount due from M. to R.  The answer of C. admitted all the material allegations of the bill, except that in regard to satisfaction on the deed of trust, alleging as a defence, that after the sale and the payment of the proceeds to M., he offered to pay to complainant, the full amount of his debt, pursuant to an agreement between them made at the time F.'s note was transferred to R. as collateral security, but that R. told M. that he had no immediate use for the money, and proposed to M. that he should pay two thousand dollars of the debt due him, and that he, R., would wait another year for the remainder, which offer M. accepted, and took up one of his notes held by R., and agreed to pay him twelve and a half per cent. interest on the residue until paid.  *Held,* that the agreement made by R. with M., to give further time for the payment of the debt, and the proof show that R. had abandoned his recourse on C. for the money received by the sale under the deed in trust.  R. acquiesced in that agreement for more than two years, having previously instituted suit against M. to recover the balance of the debt.

Where the interest of a witness is equiponderant, yet if he would be liable to costs in one event and not in the other, he is incompetent.  *Held,* that the witness M. had interest equally balanced in every view taken, and his testimony was competent.

ON appeal from the superior court of chancery; Hon. Charles Scott, chancellor.

On the 18th day of October, 1843, the appellee, John Robson, filed his bill against Cason, charging that one Wesley J. Franks conveyed certain lands and slaves to Cason in trust to secure the payment of four certain notes made by Franks to Asa B. Metcalf, &c.; that Metcalf being indebted to complainant, transferred one of said notes to him as collateral security, of which facts Cason had notice; that afterward Cason, having accepted said trust, and knowing that complainant so held said note, proceeded to sell part of said trust property pursuant to said deed, and sold the same for a sum sufficient to pay all of said notes, and entered the deed satisfied; that upon said sale, complainant demanded from Cason the amount due on said note, which he refused, and paid over all the money to Metcalf, wherefore Cason is liable, &c.

The answer admits all the material facts as above stated, except as to the entry of satisfaction, and alleged as a defence to the bill, that after the sale of the property, and respondent had paid the proceeds over to Metcalf, that he offered to pay R. the

Cason *v.* Robson.

full amount of the debt due him from him (M.), who was told by R. that he did not at the time need the money, and preferred that he (M.) would keep it, and proposed that M. should pay him (R.) two thousand dollars of the debt due him, and he (R.) would wait another year for the balance, which M. accepted and took up one of the notes due R. against him, and agreed to pay twelve and a half per cent. on the remainder until paid. Metcalf was the witness that proved the agreement between him and Robson.

The chancellor decreed that an account be taken of the amount due R., and C. appealed to this court.

*Yerger* and *Rucks*, for appellant.

The deposition of Metcalf states that the reason complainant did not receive the money at the sale of the trust property, was because he objected to receive the checks of the bank at Natchez upon the bank in New Orleans in payment, said checks being a little below par, but passing currently as Louisiana paper; that Cason paid the entire proceeds of the sale to him; about six months after the sale Robson agreed to take the checks at par; that he paid Robson two thousand dollars, and all interest which was due, at the rate of twelve and a half per cent., Robson agreeing to wait with him until the end of the year for the balance, upon receiving twelve and a half per cent. interest.

This agreement would certainly discharge the trustee from any liability, and the only question is as to the competency of the witness. It was contended in the court below that he was incompetent on the ground of interest. It is plain that his interest is balanced. Metcalf received the proceeds arising from the sale of the trust property; if he was not entitled to the money, he was liable for it either to the trustee or to the person who should have received it. The trustee could have filed a bill in equity against him on account of the mistake, and would certainly have been entitled to a decree against Metcalf for the money. The record from the Adams circuit court shows very clearly his liability to the complainant.

Metcalf's interest being balanced, and he being liable either

to Cason or Robson, his deposition would not be excluded by the rules of evidence; and this deposition showing clearly that there was a new agreement between Metcalf and Robson, by which Robson agreed to extend the time upon the debt due to him by Metcalf, upon receiving twelve and a half per cent. interest, we think there was error in the interlocutory decree of the court, and that it should be reversed.    The case made by the bill and proof shows most clearly that the complainant is not entitled to the relief he seeks.

The alleged breach of trust occurred in 1841.    No action was instituted against the trustee till 1849.    A few weeks after the alleged breach of trust, the complainant ratified the act of the trustee by receiving from Metcalf part of the proceeds of the sale, and giving to him an extension of the debt for twelve months, in consideration of a large increase of interest.    Having thus acted and quietly reposed for more than eight years, during all which time no complaint is made of the trustee, he seeks to recover from him for a breach of trust in which he has not only acquiesced, with a full knowledge of the facts, but of which he has actually availed himself in order to exact an increase of the rate of interest upon his debt.    This is contrary to every principle of equity and justice, and conflicts with the rule laid down by Lord Eldon in *Walker* v. *Leymond*, 3 Swanst. 64, in which that learned chancellor declares that " it is established by all the cases that if the *cestui que trust* joins with the trustees in that which is a breach of trust, knowing the circumstances, such *cestui que trust* can never complain of such a breach of trust; and further, either concurrence in the act, or acquiescence without original concurrence, will release the trustee."    This rule, founded in equity, entirely disposes of complainant's claim to relief.

*Potter*, for appellee.

The plea is that the offer of Metcalf to pay the debt, to secure which the trust note was given as collateral, and the extension of time for payment of part of it, released the trustee from the consequences of his default as to the collateral note. The averment is explicit, that Metcalf offered to pay the origi-

nal debt, " to secure which the said note marked B. was delivered;" not that he offered to pay the money collected on the collateral note secured by the deed of trust. Metcalf owed Robson, and gave him the trust note as collateral security; Cason was not party or liable on either debt, but he assumed a trust created to secure the collateral; he collected the money and misapplied it, and thus became liable as trustee. His plea now is that he is released, because Robson gave time on part of the original debt. Robson might well indulge Metcalf in payment of the debt he owed on the original matter between them, and yet proceed at once to collect the debt due from Franks, and from Cason as holder of trust funds.

It is to be specially noted, that Cason nowhere charges that Robson knew the trust funds had been paid to Metcalf. All that the answer suggests on this point is, that Robson duly demanded the money after the sale, and Cason refused to pay him, as his trust duty required him to do. The question of notice that the money had been paid to Metcalf, is not a matter of the defence, and of course it cannot be considered of at all. No matter of defence, not apparent on the pleadings, will avail the defendant, though it be clearly shown by the proofs. Such is the rule as to bills, and the reason of it applies to answers; if complainant must state his case, so must the defendant make known his defence. Story, Eq. Plead. § 257.

We lay out of view, therefore, the question of notice; and the case then stands, as the answer puts it, that Robson, knowing Cason had collected the money on the collateral (trust) note, agreed to give Metcalf time on the original debt, to secure the payment of which that note had been given as collateral security. It is plain, that giving time on the original debt would not have released any party on the collateral note, for it would not prevent instant suit upon the latter; and the liability of the parties on the two debts was entirely distinct and independent. Franks, and his trust estate, was liable to pay his note, whether the debt due from Metcalf to Robson was ever paid or not; and when Cason took the proceeds of that estate, his liability was in the same manner wholly distinct from the liability of Metcalf as original debtor to Robson. It is settled

9 *

that a surety on an original debt is not released by giving time on a note given as collateral security for its payment, and the converse of the proposition is equally true. *Shubrick* v. *Russell*, 1 Dessaus. 315.

But was time given, in a legal sense, on the original debt? We, say not. No consideration is averred for giving the time. The answer says that Metcalf offered to pay all, and Robson proposed he should pay $2,000, and he would wait a year for the balance; and the averment is, "that said Metcalf accepted the offer." The payment of a debt due, or part of it, constitutes no consideration for a promise. *Smith* v. *Bartholomew*, 1 Met. 278; *Peabodie* v. *King*, 12 Johns. 426.

"The consideration must be of some value, and the mere doing what the plaintiff was bound in law to do is not sufficient." 2 Saund. 137, e. n. b.

But it is said Metcalf agreed to pay twelve and a half per cent. interest on the balance. True. But the answer does not state that as a part of the consideration for giving time. The charge is, that Robson voluntarily offered to receive part and give time for the balance; "that said Metcalf accepted the offer, and settled accordingly." The contract was thus closed; and it is afterward stated, as independent matter, that Metcalf agreed to pay the twelve and a half per cent. interest. Able counsel drew the answer, and they knew what they were doing. But suppose the matter of interest constituted part of the consideration for giving time, we say it constituted no legal consideration. It was usurious and void as to the whole interest; and the contract was therefore, in law, but an agreement to pay part, in consideration of time given on the residue, which was no consideration at all.

It is therefore idle to say that the pleadings show Cason was a surety, or that any valid contract was made giving time to Metcalf. No stipulation at all was made as to the collateral note, or as to the trust funds received by Metcalf from Cason, and the latter might, at any time, have sued him for the money.

But it is said Robson acquiesced in the breach of trust duty, and so cannot recover. Did he consent to the payment to Met-

calf? No, he demanded payment to himself. Did he know that Metcalf had received the money when he offered to pay? No, that is not pretended by the answer, and you must show knowledge before you can infer an acquiescence. The matters stated in the answer do not tend to show approval or acquiescence in the breach of trust, for they relate only to the original debt, and not to the collateral note, or to the trust money, at all.

Counsel are also mistaken in supposing this bill was not filed till 1849. It was filed in 1843. Subpœna was issued in September, and executed in October, 1843. The answer was sworn to in December, 1843, and filed January, 1844. The interlocutory order appealed from, and the appeal, were entered in January, 1849. It is, therefore, idle to talk of "long acquiescence."

We think it plain, and accordingly insist, that the answer, nor the pleadings, show any defence at all; so that, whatever be the proof, complainant is entitled to a decree. Story, Eq. Pl. § 257.

Let us now consider the proof.

The deposition of Metcalf was taken by defendant. Complainant objected to him, in the first instance, as incompetent for interest. He moved to take his deposition from the files, and the motion was overruled. The question of interest will be considered presently; we now look to the facts proved. Metcalf says that Cason made the trust sale at his request, and by his instructions received from the purchasers depreciated paper; that previous to the sale, he (Metcalf) had transferred the trust note to Robson, as collateral security for two notes of upwards of $4,000, which he owed Robson, and took his receipt for the two notes; that on the day after the sale, Cason brought him the proceeds of sale, the depreciated paper, and on the succeeding day witness went to Robson "and offered him the checks (depreciated paper) in payment of my debt to him, and claiming at the same time the Franks note (collateral) which he held as aforesaid." Robson refused, unless he made the checks "equal to specie." Some six weeks after, Robson "consented to receive the checks at par," and he

paid him $2,000, which "paid off one of the notes which he held against me, and all back interest then due, at the rate of twelve and a half cents per annum," and left a balance as a credit on the "other note of mine," "Robson agreeing to wait with me until the close of the year for the remainder of my debt to him, and I agreeing" to pay twelve and a half per cent. interest, &c. He says Robson never returned the collateral note, nor did witness give up the receipt Robson had given for it; that on the day of sale Cason knew Robson held the trust note, and Cason told witness, "that on the day after the sale, Robson demanded of him the whole amount due upon said note," that is, the trust note.

Such are the statements of the witness, and we examine them in vain to find any proof of notice to Robson that Cason had paid the funds to Metcalf. The deposition does not tend to show such notice; but, if it did, we say the defendant cannot permit his own witness to prove such a matter inferentially, to prove other matters, and leave the court to infer, from his statements, that Robson had notice. If the witness knew the fact, he should have been interrogated to the point; and the failure to ask that question, raises the presumption that the witness could not have proved notice.

How stands the case, then? The answer does not pretend, nor does the proof show, that Robson gave time on the collateral, or on the money received from Cason; nor, indeed, that there was any binding contract to give time to Metcalf. It does not aver, nor does the proof show, that Robson knew that Cason had paid the funds to Metcalf. The whole defence, as presented and proved, is simply this: Robson, ignorant that Metcalf had received the trust money, agreed, without consideration, to give him time on another debt; and the pretence is, that this null agreement, as to another matter, was a release of, or acquiescence in, the default of Cason. Such a defence is clearly insufficient.

To show yet more clearly that Robson did not know the trust money had been paid over to Metcalf, and did not intend to release Cason from his liability as trustee, and that none of the parties so understood it, we refer to the fact, proved by

Metcalf, that Robson, at the time of the agreement to receive part and give time on the balance, wholly refused to give up the Franks (trust) note, though requested by Metcalf so to do. He still retained that note, and Metcalf retained his receipt for it. Now, why was this? That note had been paid by the sale of the trust property, and Franks, the maker, was no longer liable upon it. Why did Robson refuse to deliver it to Metcalf? Simply because he still reserved his claim to the trust fund to which that note was entitled. On no other ground can the conduct of the parties be explained. Robson could not have supposed that by the contract to give Metcalf time on the original debt, he was waiving his claim to the trust fund, and agreeing to look solely to Metcalf for his money; and it would have been most strange that he should consent to do so, when, at the outset, he had refused to trust to Metcalf alone, and had exacted the collateral security. The proposition asserted for Cason amounts to this: though Robson, originally, exacted and received the Franks note as collateral security for the debt due from Metcalf, he afterward, without cause, and when Metcalf had failed to pay him, voluntarily gave up that collateral security! And this assertion is made, though it is proved that Metcalf requested him to deliver it up, and he wholly refused so to do.

The plain conclusion is, that Robson was ignorant that Metcalf had received the trust fund from Cason, and that he never acquiesced in the default of Cason, or intended to release him or give time on the demand against him. He retained the trust note solely because he held Cason bound as trustee to him for the proceeds of the trust sale, and he agreed to give time only upon the original debt. There is no pretence that he ever ratified, or even knew of, the default of Cason; on the contrary, his refusal to give up the trust note is conclusive proof that he still looked to Cason as liable to him for the proceeds of the trust sale.

We might insist further, were it necessary, that the agreement for time was void under the statute of frauds, because not in writing, nor to be performed within the year, but enough has

been said to show that the defence is wholly unfounded, even upon the proof of Metcalf.

We will now show that he was incompetent for interest, and without his evidence there is no pretence of a defence.

This objection was made at the taking of the deposition, and again renewed, by motion, in the chancery court.

It is said the witness stands indifferent between the parties, his interest equally balanced. We say not. He may be liable to either party, but not in the same amount. He is, in two aspects, within the following rule: " Where the opposite interests are unequal, the witness has an interest on one side, measured by the excess of the one interest over the other. And therefore where the interest is equiponderant in other respects, yet if the witness would be liable to costs in one event, but not in the other," he is incompetent. 1 Stark. (Gerhard & Metcalf) Ev. p. 131 ; 1 Greenl. Ev. § 391.

Now, if a recovery is had here, what sum can Cason recover from Metcalf? Plainly but the amount Cason is decreed to pay us, with interest, the costs of this suit, and fees of counsel. He is, therefore, interested to reduce the amount of our recovery. Accordingly he comes in and proves that our original contract was usurious, and that we made an usurious agreement to give time on the balance due upon it. He says he paid up " all back interest then due at the rate of twelve and a half per cent. per annum," thus showing that the original debt bore twelve and a half per cent. interest, and was usurious as well as the contract for time. It is obvious, under the decisions of this court, that if the original debt was thus usurious, Robson could enforce the collateral note only for the amount of principal due to him from Metcalf, without interest. On this proof the decree in this case against Cason would be only for the amount of the balance of principal due from Metcalf on the original contract; nay worse, on the accounting, the payments already made of usurious interest would be taken into the account, and deducted from the principal. Admit Metcalf to swear up the usury, and he thus diminishes the recovery against Cason, and to the same extent diminishes the amount that Cason can recover over

against him. Now, suppose that Robson sues Metcalf, what can he recover? The amount of the whole balance, with lawful interest, with no deductions for usury. In that suit Metcalf will defend, and not be the witness, and the defence of usury fails for want of the witness. The difference in the results, as you admit or exclude Metcalf, is therefore the whole interest on the debt, with the amount of usury already paid, as he pretends. If the usury was admitted, or proved by independent testimony, it would be different. But how can you say the witness stands indifferent when, if he is admitted, he avoids all liability for interest on the debt, and in the other is liable for principal and interest? The authorities are uniform that a party shall not testify where his evidence may relieve himself, in whole or in part, from liability, and that is the precise effect of Metcalf's testimony in this case; wherefore there is not an equipoise of interest.

He is also liable to Cason for the costs, &c., of this suit. When he received the trust money from Cason, Metcalf gave him an acquittance " to discharge him from all further liability " for the money. This was a contract to save him harmless against any demand for that money,— harmless against this demand on the part of Robson. Both of them knew that Robson claimed the money, and had demanded it from Cason. Wherefore, on receiving it from Cason, Metcalf agreed to save him harmless " from all further liability," it was a contract to indemnify against this very demand. If he is liable to Cason for the costs of this suit, he is clearly incompetent; and is there a pretence to say that he is not so liable under his agreement to discharge Cason " from all further liability?" 1 Greenl. Ev. § 393, 394, 395, 396, 397, 398.

Is he not most interested that Cason should prevail in this suit, and so incompetent? *Owen* v. *Mann*, 2 Day, 399.

Here he has a certainty of lessening the amount he is to pay, by himself proving the usury; whilst, if Robson sues him, he may not be able to show any usury.

Mr. Chief Justice SMITH delivered the opinion of the court.

John Robson, the appellee, filed his bill in the superior court

of chancery against Canady Cason, the testator of the appellant, alleging that certain lands and slaves were conveyed by Wesley J. Franks to said Cason in trust to secure the payment of certain notes made by Franks to Asa B. Metcalf; that Metcalf, being indebted to the complainant, transferred one of the notes to him as collateral security; that Cason accepted the trust, and having notice that complainant held the said note for the purpose above stated, sold a part of the property conveyed to him as trustee for an amount of money sufficient to pay off all the notes secured by the trust deed, and entered the same as satisfied; and that after the sale, and before the deed was entered satisfied, or the proceeds disposed of, the complainant demanded payment from Cason of the amount due from Metcalf to complainant. The bill prayed for discovery and relief.

Cason answered the bill, admitting all the material allegations except the charge in regard to the entry of satisfaction on the deed of trust; and alleging, as a defence to the bill, that after the sale, and after respondent had paid the proceeds to said Metcalf, Metcalf offered to pay to complainant the full amount of his debt, pursuant to an agreement between them, entered into at the time Franks's note was transferred to complainant as collateral security; but that complainant told Metcalf that he had no immediate use for the money, and proposed to Metcalf that he should pay two thousand dollars of the debt due him, and that complainant would wait another year for the remainder; that Metcalf accepted the offer, took one of his notes held by complainant, and agreed to pay him twelve and a half per cent. interest on the residue until paid.

The cause was submitted on bill, answer, and proofs; and a decree was rendered ordering an account to be taken by the commissioner; from which an appeal was prayed to this court.

It is insisted that the matters alleged in the answer were a good defence to the bill, and that the answer was fully sustained by the proofs.

We will first consider the sufficiency of the defence relied on in the answer. The complainant had notice of the sale of the trust property, and that the deed of trust was entered satisfied. Satisfaction was entered on the 8th of May, 1841, and so

charged in the bill. The complainant is further chargeable with express notice that the proceeds of the sale were sufficient to discharge all of the notes then unpaid secured by the trust deed. This charge appears from the complainant's own showing. The bill charged that Cason acknowledged to have realized from the sale a sufficient amount of money for that purpose, and that complainant claimed payment from Cason of the amount due him by Metcalf, before Cason disposed of the proceeds of the sale. But, however strong the inference, it does not appear from any averment in the answer that the complainant entered into the agreement, having notice at the time, that the proceeds of the sale were paid over to Metcalf. Hence it is not to be controverted that the agreement cannot be construed into a consent on the part of the complainant to any previous misappropriation of the trust fund by Cason, by which he would be discharged from his liability to the complainant.

It is further objected that the agreement, as averred in the answer, is manifestly void for want of a sufficient consideration. And hence it is insisted that it could affect neither the right nor the remedy of the complainant as a beneficiary under the trust deed as against Cason. It may be conceded that the agreement, as between the complainant and Metcalf, was void for the reason assigned, and consequently did not suspend complainant's right to proceed against Metcalf for the collection of the residue of the debt remaining unpaid. But the invalidity of the agreement as between these parties is not, we apprehend, the question to be considered. The true point of inquiry is, whether we are not to consider the agreement, under the attending circumstances, as a consent on the part of the complainant that Metcalf should have the use of the money for the time stipulated, to which the complainant was entitled, and which was then in the hands of Cason as trustee.

The complainant, with a full knowledge that Cason had realized from the sale an amount of money sufficient to pay off all the notes secured by the trust deed, and that the deed itself had been entered satisfied, and having no immediate use for the portion of the proceeds of the sale to which he was entitled as the creditor of Metcalf, holding one of the trust notes as col-

lateral security for his debt, proposed to Metcalf that he should pay two thousand dollars of his debt, and that complainant would wait another year for the remainder, upon Metcalf agreeing to pay interest at a high rate upon the residue of his debt. The proposition thus made was accepted, and a settlement was accordingly made.

This transaction, in our opinion, can be looked upon in no other light than as an agreement that Metcalf should have the use of the money then in the hands of Cason. This was most evidently the construction which both parties put upon the agreement. The complainant had no immediate use for the money, and when full payment was offered, proposed that two thousand dollars should be paid on Metcalf's debt, and that he would wait another year for the residue. If Metcalf was not to have the use of the proceeds of the sale, the proposition was absurd, and its acceptance by Metcalf without any motive whatever. For why would the complainant agree to wait with Metcalf, and exact from him a high rate of interest upon his debt for the indulgence, if he designed to compel payment from Cason, or for what purpose could Metcalf have acceded to those terms, unless the complainant had abandoned his recourse upon Cason? If the proceeds, therefore, were afterwards paid over to Metcalf, upon no principle of law or equity would Cason be bound to account for them to the complainant. But it appears that the proceeds were in fact paid to Metcalf before the agreement was entered into, and the inference is not to be doubted that the complainant was acquainted with the fact. This fixes the true intention of the parties to the agreement, and renders it immaterial whether the proceeds were paid to Metcalf before or after the agreement. If any circumstance were wanting to show that the complainant had abandoned his recourse upon Cason, it is found in his subsequent conduct. He appears to have acquiesced in the arrangement for more than two years, having previously instituted suit against Metcalf to recover the remainder of his debt.

Metcalf was introduced as a witness for Cason, who testified that the trust property was sold at his request, and that Cason was instructed by him to receive in payment for the same in

Louisiana funds, or what was equivalent thereto. Accordingly the property was paid for by the purchaser in the checks of the Commercial Bank of Natchez on the Commercial Bank of New Orleans, which were then at a depreciation of three or four per cent. On the day after the sale the proceeds were paid over to him by the trustee, and on the following day he offered to pay the complainant the amount he owed him in the said checks, but which the complainant then refused to receive in payment, unless they were made equal to specie, but some short time afterwards consented to receive the checks at par. The witness accordingly paid him two thousand dollars in the said checks, which paid off one of the notes then held by complainant, and back interest then due at the rate of twelve and a half per cent. per annum, which left a balance, which was indorsed as a credit on the remaining note of the witness, " the complainant agreeing to wait with the witness until the close of the year for the remainder of the debt, and the witness agreeing to allow the complainant interest at the rate of twelve and a half per cent. per annum, as before, until paid."

This evidence was doubtless sufficient to sustain the answer, unless, as it is contended, Metcalf was, by reason of his interest in the event of the suit, an incompetent witness.

Metcalf was indebted to the complainant on two notes; and in consideration of such indebtedness, had transferred to him one of the notes secured by the trust deed as collateral security. A sufficient amount was realized from the trust sale to pay off all the notes, and the whole of the proceeds were paid over to Metcalf. Metcalf was hence liable, under all circumstances, to the complainant for the full amount of his debt, and would be liable to Cason for the amount of the recovery against him in case the complainant should recover in this suit. Thus far it is manifest that the interest of Metcalf was equally balanced. But it is insisted that Metcalf would be liable to Cason for the costs of this suit, as well as for the amount of the recovery, in the event that a decree should be rendered in favor of the complainant. Consequently his interest in the event of the suit preponderated in favor of the party offering him as a witness.

The rule on this subject is thus laid down: " Where the op-

posite interests are unequal, the witness has an interest on one side measured by the excess of the one interest on the other; and therefore where the interest is equiponderant in other respects, yet if the witness would be liable to costs in one event, and not in the other, he is incompetent.    1 Stark. Ev. 131.

It is clear that Metcalf would not be liable over to Cason for the costs of this suit, unless he is bound to indemnify him by reason of the receipt given to Cason for the proceeds of the trust sale.    The receipt referred to is simply an acquittance or discharge from all liability on account of the money received in virtue of the trust sale.    It contains no covenant to indemnify the trustee against the demands of any other person.    In every view, therefore, his interest was equally balanced.    He was, consequently, a competent witness.

Decree reversed, and bill dismissed.